CHARLES F. JOHNSON, Assignee,

*vs.*

SKOWHEGAN SAVINGS BANK.

Somerset.    Opinion January 11, 1900.

*Mortgage.   Payment.   Discharge.*

A mortgagee does not relinquish his lien on the mortgaged property by taking notes of a third party, when he does not apply the notes in payment of the mortgage debt, and neither cancels nor surrenders the mortgage, and does not surrender or intend to surrender his security.

A vendee, the plaintiff's assignor, bought certain logs, knowing them to be mortgaged to the defendant bank. He sent his notes, payable to the order of his vendor, on three, six and nine months, for more than was due on the mortgage to the bank, so that the vendor could not appropriate them and leave the mortgage outstanding, and failed. The bank did not apply the notes to the payment of its mortgage debt or cancel or surrender the mortgage.

*Held;* that it never surrendered its security, and never intended to.

ON REPORT.

This was an action of trover in which the plaintiff, as assignee of Edward Ware, an insolvent debtor, sought to recover of the defend- ant $8,930.55, the value of certain pine, spruce and cedar logs and which he claimed had been sold to said Ware, by one W. H. Clark, prior to the proceedings in insolvency, and by him mortgaged to the defendant bank. The plaintiff claimed (1) that this mort- gage was paid by the receipt of three notes given by Ware to Clark for the logs and indorsed by Clark to the bank; and (2) that the bank consented to the sale of the logs by the mortgagor, Clark; and having received the proceeds of the sale is estopped to set up any claim to them under its mortgage; and that the title to them passed to Edward Ware and was assigned by him to the plaintiff free from the lien of said mortgage.

The defendant, the Skowhegan Savings Bank, claimed title to the logs by virtue of a mortgage given to it by said Clark on the first day of December, 1897, which mortgage was made to secure ad- vances to be made to the said Clark by the defendant to enable him to carry on his lumbering operations during the winter of 1897 and 1898, and which covered not only the mark of logs in dispute but also another mark. Under this mortgage the sum of $13,100.00 was advanced by the bank to Clark from December 1, 1897, to May 19, 1898, and it has not been discharged or given up.

An assignment was made by Ware to the plaintiff May 25, 1898, of all his real estate and personal property for the benefit of his creditors under chapter 325, § 16, of the statutes of 1897. No question was raised as to the validity of the assignment, or that the same was not ratified by the requisite number of creditors and approved by the judge of the insolvency court of Kennebec county, in which the petition of Ware, with his assignment and ratification by the creditors, was filed. It was also admitted that the logs in dispute were sold to Ware by Clark.

The plaintiff introduced testimony, to show the course of deal- ing at the bank, that for a period of eight years from 1890 to 1898, with the exception of one year, the defendant had furnished money to Clark with which to conduct his lumbering operations during the winter, and in the spring Ware had made his notes payable to

Clark for part if not the whole of each winter's cut and had sent or carried them to the Skowhegan Savings Bank; and after he had done so, Ware testified that the bank had never asserted any claim to the logs bought of Clark.' The plaintiff also offered other testimony to show that the treasurer of the bank did not claim that the bank ever interfered with Ware's possession or manufacture of the logs into lumber at his mill; and notes to the amount of about sixteen thousand dollars given by Ware to Clark for logs upon which the bank had held mortgages previous to the year in which the logs in question had been cut, had been discounted at the First National Bank which occupies the same banking rooms as the savings bank and in which the treasurer was also a director, and were held by that bank at the time Ware made his assignment, and Clark's notes and mortgages had been returned to him. During all these years, as the treasurer testified, he considered Ware's notes good; and that about the first of May, 1898, only about three weeks prior to the assignment, he, as the director of the bank, consented to a renewal of some of these notes. It also appeared that such had been the course of dealing between the parties every year with the exception of one, from 1890 down to the spring of 1898. Clark had carried on lumbering operations, obtaining money from the defendant bank by giving mortgages upon the logs to be cut by him and then had sold the logs to Ware, taking his notes for the same and these notes had been sent or carried by Ware to the bank. The plaintiff then introduced testimony which relates to the transaction in question as follows:

In the spring of 1898, Ware again bought of Clark a large part of his cut of logs for the previous winter and arranged to give his notes for the same, for $15,777.44, on three, six and nine months, from May 1, the usual time on which logs are bought by the millmen, thus giving them an opportunity to pay for the logs out of the manufactured lumber. Ware testified that he went to Skowhegan, previous to the time when these notes were sent to the bank, to see Page in regard to renewing some of the notes given by him to Clark in previous years and then held by the First National Bank and which fell due about the first of May, 1898; that he

had a conversation with Page in regard to renewing the notes which were about to fall due, and that Page told him he might make the renewals, but that he wanted him to make the time as short as possible as he had got to take the Clark notes again. But the treasurer testified that the conversation took place at a later day. Ware also testified that he understood that the savings bank held a mortgage on the logs purchased by him of Clark in the spring of 1898; and that by an agreement with Clark, he sent his notes to the bank to take up the notes and mortgage which Clark had given it.

April 15, 1898, Ware sent the three notes to the Savings Bank. On the following day he received the letter from Page, acknowledging the receipt of notes for the Clark logs, and stating that the writer thought them to be correct.

The defendant bank introduced evidence that the treasurer had no information from any person that he was expected to receive these notes in payment of the Clark notes and mortgage; that he intended to receive them as collateral; that he did not accept them in payment of the mortgage, but designed to credit upon the Clark notes and mortgage the amounts paid by Ware, as they were received from him upon his notes. These notes were not entered upon the books of the bank as its property.

It also appeared that not only the treasurer of the bank was ignorant of any such substitution, understanding that, by law, he had no right to do this; but that Clark did not understand his notes and mortgage were paid, as he made no claim to the balance of the two to three thousand dollars in excess of the Ware notes over and above his own notes, to which he would have been entitled if the Ware notes had paid his own, but left the Ware notes in the bank as collateral to his own, and subsequently took them into his hands when it was found necessary to do something in relation to the same after his own insolvency; and that Ware well understood what was the bank's arrangement, year after year, to take the notes given for logs mortgaged and hold them as collateral.

On the day of Ware's assignment, the treasurer requested Ware to take back the notes in question; but Ware refused.

*C. F. Johnson,* for plaintiff.

If the savings bank's consent to the sale of the logs by Clark was actually given, then it is estopped from claiming any title to the logs against the purchaser; and if its consent to a sale to Ware was actually given or can be implied from the course of dealing in previous years, there would be certainly a stronger reason for the application of this principle of law and also of sound common sense, than if the consent to the sale had been general.

A sale of the mortgaged property with the consent of the mortgagee estops him from afterward setting up any claim to the mortgaged property. Jones, Chat. Mort. 4th. Ed. §§ 456, 457, 458; *Gage* v. *Whittier,* 17 N. H. 312; *Roberts* v. *Crawford,* 54 N. H. 532; *Carter* v. *Fately,* 67 Ind. 427; *Stafford* v. *Whitcomb,* 8 Allen, 518; *Bangs* v. *Friezen,* 36 Minn. 423; *Benedict* v. *Farlow,* 1 Ind. App. 160; *Littlejohn* v. *Pearson,* 23 Neb. 192; *First Nat'l Bank* v. *Weed,* 89 Mich. 357; *Brooks* v. *Record,* 47 Ill. 30; *Patrick* v. *Meserve,* 18 N. H. 300; *Brandt* v. *Daniels,* 45 Ill. 453; *Thompson* v. *Blanchard,* 4 N. Y. 303; *Bank* v. *Raymond,* 57 N. H. 144; *Chase* v. *Willard,* 67 N. H. 369; *Shearer* v. *Babson,* 1 Allen, 486.

Consent of the mortgagee may be implied from the fact that he has knowledge that the mortgagor has sold property covered by mortgages held by it in the past, and has received the proceeds of such sales. And it also may be implied from the general course of dealing of the parties. *Pratt* v. *Maynard,* 116 Mass. 388: *Riley* v. *Conner,* 79 Mich. 497; *Jenckes* v. *Goffe,* 1 R. I. 511; *Thompson* v. *Blanchard,* 4 N. Y. 303; *Walker* v. *Clay,* 49 L. J. R. 660.

In such cases the mortgagor is held to be the agent of the mortgagee. *Jenckes, Admr.,* v. *Goffe,* 1 R. I. 511 *Ogden* v. *Stuart,* 29 Ill. 122; *Barnet* v. *Fergus,* (99 Am. Dec. 547) 51 Ill. 352 and 355; *National Mercantile Bank* v. *Hampson,* 5 Q. B. D. 177; *Abbott* v. *Goodwin,* 20 Maine, 408; *Melody* v. *Chandler,* 12 Maine, 282; *Foster* v. *Perkins,* 42 Maine, 168.

A mortgagee who accepts the proceeds or benefits of sales made by the mortgagor cannot question their validity. *Etheridge* v. *Hilliard,* 100 N. C. 250.

Ware believed, and he had a right to believe, from this letter and from the manner in which business had been conducted in the past, that he was obtaining a good title to the logs; and the bank is estopped from claiming title in itself. *Chapman* v. *Pingree*, 67 Maine, 198; *Hatch* v. *Kimball*, 16 Maine, 146.

Clark was as much the agent of the savings bank in making this sale as he would have been had the bank acquired an absolute title to the logs by a foreclosure of its mortgage and engaged Clark to sell them for it, and if there had been no previous consent to their sale by Clark, the bank's receipt of the proceeds of the sale would have been a ratification of it. *Jenckes, Admr.*, v. *Goffe*, 1 R. I. 511.

The mortgage itself repudiates the claim that it was intended as security for any notes that might be taken in the sale of the logs. It is dated December 1, 1897, and all sums advanced by the bank were by its terms to be paid in six months from that date. Mr. Page testifies that the usual practice is to pay for logs in notes on three, six and nine months, and if it had been the intention of the Savings Bank to have taken the notes received from the sales of logs as collateral for Clark's notes, the sums advanced under the mortgage would not have been made to fall due until the notes given for the logs should fall due. All these sums would become due June 1, 1898, at a time when all the logs would have been driven to the main river and could be sold, and it is evident that the bank intended that Mr. Clark should then sell them and turn over to it enough of the proceeds of the sale in notes to pay the mortgage. The fact that the Savings Bank is prohibited by statute from loaning money to parties except corporations, without security, does not prevent the doctrine of estoppel applying to it under the circumstances, for it has been held by this court that such a statute is directory. *Farmington Sav. Bank* v. *Fall*, 71 Maine, 49; *Roberts* v. *Lane*, 64 Maine, 108.

*S. J. and L. L. Walton*, for defendant.

There is no question as to the validity of this mortgage, (*Claflin* v. *Carpenter*, 4 Met. 580; *Douglas* v. *Shumway*, 13 Gray, 498; *Banton* v. *Shorey*, 77 Maine, 48) and that the bank advanced some

$12,500 to Clark, who then owned the logs and gave the mortgage. This mortgage has never been discharged or the notes given up. The plaintiff's claim, in its strongest presentation, is that Ware, whom he represents, bought the logs upon which the mortgage rested, of the mortgagor (Clark) with full knowledge of the mortgage, and sent his own notes for their value to the treasurer of the savings bank as he supposed to take the place of the mortgage without any definite arrangement with the officers of the bank that such should be the effect.

The treasurer did not intend or suppose that, by receiving the Ware notes, he took them in place of the Clark notes and mortgage. It is true, there was no express arrangement with Ware that his notes should be given and held as collateral to Clark's. No agreement whatever about it. No agreement that the amount of the Ware notes should be credited until paid.

A man who purchases property upon which he knows there is an existing mortgage, should make definite arrangements about the payment and discharge of the claim. The mortgage is not to be set aside upon the expectation or belief of the purchaser, or any one else, that the mortgagee is willing to accept or has accepted his notes or other security for the lien. There is no reason why, if the mortgage is paid and the purchaser so understands it, that he should not call for its discharge upon the record. Not to ask this is such indifference and negligence on his part that he ought to be debarred from resisting the mortgage claim, unless the acts of the mortgagee have been of that decisive character that it amounts to an express waiver, or of so deceptive a nature, so misleading to the purchaser, that the mortgagee is thereby clearly estopped from enforcing his mortgage. The burden is, therefore, upon the plaintiff to show that something was done by the bank which amounted to a waiver of its claim or of that character that it is now estopped from relying upon and enforcing the same.

The treasurer understood he had no right to take a note of an individual in payment of such a secured debt. He intended to keep within the provisions of R. S., c. 47, § 100. There can be no question, therefore, that the mortgagee did not intend to discharge or waive his mortgage.

Waiver:    Waiver is a voluntary relinquishment or renunciation of some right, a foregoing or giving up of some benefit or advantage, which, but for such waiver, he would have enjoyed.   It may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive.    Still, voluntary choice not to claim is of the essence of waiver, and not mere negligence; though from such negligence, unexplained, such intention may be inferred.    The question of waiver, therefore, is a question of fact for a jury; it may be proved by various species of proofs and evidence, by declarations, by acts, and by nonfeasance or forbearing to claim or act; but however proved, the question is, "Has he willingly given up and forborne to claim the benefit of the condition?" *Farlow* v. *Ellis*, 15 Gray, 231–232.

Estoppel: "It is the general rule of estoppel in pais that a party will be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of another." *Cummings* v. *Webster*, 43 Maine, 194.

"The declarations or acts relied upon must have induced the party seeking to enforce an estoppel to do what resulted to his detriment, and what he would not otherwise have done.    If his action was not changed by what was said he has no cause of complaint." *Allum* v. *Perry*, 68 Maine, 234.

"It seems to us that in all cases when a party is to be deprived of his property or his right to maintain an action by estoppel, the equity ought to be strong and the proof clear."   Per WALTON, J., in *Stubbs* v. *Pratt*, 85 Maine, 432.

"To make out a case of abandonment or waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose, or acts amounting to estoppel on his part. *Ross* v. *Swan*, 7 Lea, (Tenn.) 467; *Dicht* v. *Insurance Co.*, 58 Pa. St. 452.

He knew there was a mortgage.    He did not ask that it be dis-

charged. Suppose, that instead of his notes being larger than the amount due upon the mortgage by some two or three thousand dollars they had been less, what then? "He should have looked for something more that equivocal acts merely admitting a possible inference that it had been discharged." *Copeland* v. *Copeland*, 28 Maine, 541.

The acts of the treasurer could not bind the bank. R. S., chap. 47, § 114. *Holden* v. *Upton*, 134 Mass. 177; *Dedham Institution for Saving* v. *Slack*, 6 Cushing, 408.

SITTING: PETERS, C. J., EMERY, HASKELL, WISWELL, SAVAGE, FOGLER, JJ.

HASKELL, J. One W. H. Clark, being about to engage in a lumbering operation, and in need of funds to carry it on until he could sell his logs, arranged with the defendant bank to make the necessary advances, and secured the bank by mortgage upon the product of the operation to secure the same made within six months. The advances amounted to $12,500, for which the bank took Clark's notes.

Clark sold the logs to Edward Ware, plaintiff's assignor. Ware made notes to the order of Clark and sent them by mail to the bank, receiving in reply, "Yours of the 15th inst. enclosing notes for Clark logs received. I think they are correct." In about a month, Clark went to the bank, within the six months named in the mortgage, and gave his note for a further advance of $600 and indorsed the Ware notes, amounting to $15,687.54, in blank and left them with the bank. Soon afterwards Ware failed, and the defendant bank enforced its mortgage upon the logs. Ware's assignee sues to recover their value, asserting that the mortgage debt had been paid by the Ware notes.

The transaction does not sustain this contention. Ware bought the logs knowing them to be mortgaged. He sent his notes for more than was due on the mortgage to the bank, payable to the order of Clark, so that Clark could not appropriate them and leave the mortgage outstanding. Ware's purpose was to have the pro-

ceeds of the notes applied to the mortgage debt.   He failed, and voluntarily assigned in less than forty days after he sent the notes. He must have known his own condition, and, if an honest man, could not have intended that notes due in three, six and nine months, respectively, should have operated to discharge the mortgage and turn the mortgage security from the bank to his own creditors.   That would have been a fraud.   Nor could Clark so have understood the transaction, for the notes amounted to more than his loan, and he neither received the balance in his favor nor took up his own notes and procured a discharge of the mortgage. The substance of the transaction was a sale of mortgaged logs, the vendee to pay the mortgage in three, six and nine months, when his notes for the purchase money should fall due, until which time it was hoped there would be no necessity for enforcing the mortgage.   The bank never intended to surrender its security, and never did.

*Judgment for defendant.*